

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LOUISE JUMPING EAGLE, | ) | CIV. 05-5016-RHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM DECISION |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

    Plaintiff, Louise Jumping Eagle, commenced this action seeking judicial review of the administrative law judge's (ALJ's) determination that her husband, Delmas, was not disabled prior to his demise. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The decision of the ALJ is affirmed.

## FACTS

    Delmas was born on April 22, 1940, in Pine Ridge, South Dakota. AR 1368. At the time of the alleged onset of disability (September 19, 1985), Delmas would have been approximately 45 years of age. AR 48. Delmas had completed the 10th grade. AR 1368. In 1961, when he was 21 years old, Delmas joined the army. AR 1074. While in the army, he earned his GED. AR 1368. During his enlistment, Delmas served two years in Vietnam where he was involved in a land mine explosion and suffered shrapnel wounds to his right thigh. AR 1098, 1149. Consequently, Delmas received medicinal treatment for anxiety in 1965 and 1966. AR 1094. Though he continued to suffer from anxiety/post traumatic stress throughout his life, Delmas did

not seek treatment for the condition after this time. AR 31. He left the service in 1974. AR 1074.

From 1979 to 1982, Delmas worked a variety of construction jobs. AR 88. In 1983, Delmas became a janitor with Indian Health Services in Pine Ridge. He continued in this position until 1986 when he lost his job. AR 88, 1073.

Delmas suffered from a variety of impairments. In the 1970s, Delmas began receiving treatment for hypertension. AR 27. Though controllable through medication, Delmas was generally non-compliant with any treatment regimen. AR 27-28. In 1983, Delmas was diagnosed with diabetes. AR 28. Again, Delmas did not follow the prescribed diet. AR 28. In November of 1986, he was diagnosed with diabetic or alcoholic neuropathy. AR 28. In February of 1988, Delmas was diagnosed with peripheral neuropathy. AR 28. Delmas also suffered from superficial varicose veins on both legs and had a history of back pain. AR 28. During the relevant time period, however, he did not complain of back pain or symptoms stemming from the varicose veins or seek treatment for either condition. AR 28.

The majority of Delmas's medical treatment during the relevant time period was dedicated to complications from his alcohol dependence. AR 29. Delmas was hospitalized in 1975 for alcohol gastritis. AR 29. Upon admittance, he reported having been hospitalized twice previously for upper GI bleeding after drinking. AR 29. He was hospitalized again in May of 1978 and May of 1980 for such complications. AR 29. He was hospitalized yet again in July of 1984, September of 1987, and June 6, 1988, for upper GI bleeding after episodic drinking. AR 29.

Delmas was hospitalized for treatment of alcohol abuse on April 15, 1985, through May 17, 1985. AR 29. He was hospitalized a second time for alcohol abuse treatment from May 13, 1986, to May 30, 1986. Delmas passed away on January 31, 2003. AR 26.

Several applications for disability benefits had been filed on behalf of Delmas. AR 25. These applications were filed on September 13, 1983, January 21, 1986, June 11, 1987, and January 19, 1988. AR 25. Each of these applications was denied and became final without an appeal. AR 25. Delmas filed his fifth application on June 19, 1991. AR 25. He alleged that he became disabled on August 2, 1985. AR 25. This fifth claim was denied on May 26, 1993, after a hearing before an ALJ. AR 25. A sixth application was filed on June 19, 1998, alleging that Delmas became disabled on September 18, 1985. AR 25. An ALJ determined that the doctrine of res judicata applied and so denied Delmas's claim on September 21, 2000. AR 25. Delmas appealed the denial to the Appeals Council. AR 25. The Appeals Council determined that res judicata was not applicable and remanded the matter to the ALJ on February 5, 2002. AR 25. On December 9, 2002, the ALJ again denied the application on the basis of res judicata. AR 25. Again, the Appeals Council remanded the case. AR 25. A hearing was held on February 25, 2004, before a different ALJ. AR 26. Though Delmas had passed away, his widow was substituted as the appropriate party and appeared at the hearing. AR 26. She was represented by counsel. AR 26. A vocational expert (VE) also testified at the hearing. AR 26.

In his opinion, the ALJ first set forth the relevant time period as September 19, 1985, (the alleged date of onset of disability) to June 30, 1988 (the last date of insured status). AR 27. Then the ALJ found that Delmas had worked as a janitor, construction worker, carpenter inspector, and an apartment maintenance man. AR 27. He further concluded that Delmas had

not engaged in substantial gainful activity during the relevant time period. AR 27. Based upon the evidence in the record and the testimony received at the hearing, the ALJ then determined that Delmas suffered from the following severe impairments: high blood pressure, diabetes mellitus with peripheral neuropathy, alcohol dependence, peptic ulcer disease, varicose veins, lumbar degenerative disk disease, status post fracture of the left big toe, and anxiety/post traumatic stress disorder. AR 27. The ALJ concluded, however, that these impairments did not meet or equal a listed impairment. AR 27. The ALJ further concluded that Delmas did not have the residual functional capacity to return to his former employment. AR 27. After an extensive discussion of Delmas's medical history and the credibility of his prior testimony and the testimony of other lay witnesses, including Delmas's widow, the ALJ concluded that Delmas was not disabled. AR 40.

## STANDARD OF REVIEW

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995) (citing Sullins v. Shalala, 25 F.3d 601, 603 (8th Cir. 1994), cert. denied, 573 U.S. 1076, 115 S. Ct. 722, 130 L. Ed. 2d 627 (1995)); Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might find it adequate to support the conclusion. Fines v Apfel, 149 F.3d 893 (8th Cir. 1998) (citing Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). See also Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)). See also Onstead v. Sullivan, 962 F.2d 803 (8th Cir. 1992) (quoting Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991)). Review by this Court extends beyond a limited

search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision. Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

However, the Court's role under section 405(g) is to determine whether there is substantial evidence in the record as a whole to support the decision of the Commissioner and not to reweigh the evidence or try the issues de novo. Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Furthermore, a reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993); Smith v. Shalala, 987 F.2d at 1374 (citing Locher, 986 F.2d at 727 (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984))). The Court must review the Commissioner's decision to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983). The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court. Smith v. Sullivan, 982 F.2d at 311; Satterfield v. Mathews, 483 F. Supp. 20, 22 (E.D. Ark. 1979), aff'd per curiam, 615 F.2d 1288, 1289 (8th Cir. 1980). As long as the ALJ's decision is supported by substantial evidence, then this Court cannot reverse the decision of the ALJ even if the Court would have decided it differently. Smith, 987 F.2d at 1374.

## DISCUSSION

A.   **Failure to Identify all Severe Impairments**

Plaintiff's first argument is that the ALJ erred in failing to identify all severe impairments. Plaintiff claims that the ALJ should have included "bridging arthritis of the lumbar

spine, cervical disk disease and cervical arthritis, arthritis of the right knee, vascular calcifications of hands and feet secondary to diabetes and visual impairment." Plaintiff contends that these impairments were previously attributed to Delmas and, therefore, the current ALJ is bound by those findings. In the decision dated May 26, 1993, the ALJ found that Delmas suffered from "diabetes mellitus, residuals of a fracture of the left leg, history of shrapnel wound to the right knee without detectable deformity, history of peptic ulcer disease, hypertension, degenerative disc disease of the lumbosacral spine, and periodic alcohol abuse." AR 1235. The current ALJ determined that Delmas suffered from "high blood pressure, diabetes mellitus with peripheral neuropathy, alcohol dependence, peptic ulcer disease, varicose veins, lumbar degenerative disk disease, status post fracture of the left big toe, and anxiety/post traumatic stress disorder. . . ." AR 27. The Court finds that the finding of severe impairments between the two ALJs is substantially similar and not in error. The other alleged severe impairments arise in the medical records after the date Delmas was last insured and therefore, were not considered by the ALJ. "When an individual is no longer insured for Title II disability purposes, we will only consider an individual's medical condition as of the date [he] was last insured. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997) (citing Bastian v. Schweiker, 712 F.2d 1278, 1280 (8th Cir. 1983)). As a result, the Court finds that the ALJ did not err in his assessment of Delmas's severe impairments.

B.     **Failure to Properly Weigh Opinions of Specialists**

Plaintiff's next complaint is that the ALJ failed to give the appropriate weight to the opinions of Dr. Pickett, Dr. Chestnut, and Dr. Renka, and instead gave greater weight to a non-specialist, Dr. Manoutchehri. The opinion of a specialist in the area of his expertise is generally

6

given greater weight than an opinion of a non-specialist. See 20 C.F.R. § 1527(d)(5). Plaintiff argues that the specialists found that Delmas suffered from anxiety with depression whereas Dr. Manoutchehri found him to be calm and not anxious or depressed. Given the fact that the ALJ found that Delmas suffered from "anxiety/post traumatic stress disorder" it is difficult for the Court to find that the ALJ did not give the proper weight to the opinions of Dr Pickett, Dr. Chestnut, and Dr. Renka. In fact, the ALJ spoke of each of their opinions extensively. AR 30. The ALJ, however, also noted that "[d]uring the relevant period the claimant did not seek any medical treatment for his anxiety or PTSD. He did not participate in any counseling or therapy and he was not prescribed any psychotropic medications." AR 31. Accordingly, the Court finds the ALJ gave the appropriate weight to the opinions of the specialists.

C.  **Inconsistency Between Severe Impairment Findings and Residual Functional Capacity (RFC) Findings**

Plaintiff next argues that this matter should be remanded so the ALJ may rectify the inconsistency between his finding of a severe impairment of anxiety/post traumatic stress disorder and his finding that Delmas was only moderately restricted "in the ability to make simple work related decisions, appropriately respond to changes in the work routine, and appropriately respond to work related pressures." AR 38. The ALJ's findings and instruction to the Vocational Expert (VE) that the moderate restrictions meant that the person could still function satisfactorily is consistent with the "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form completed by Dr. James Simpson. AR 1351-52. The Court finds no inconsistency between the finding of a severe impairment of anxiety and a moderately restricted ability to interact in the work place and will not order remand based upon this issue.

D.   **Failure to Complete a Psychiatric Review Technique Form**

Plaintiff next alleges that this matter should be remanded because the ALJ failed to have a qualified psychologist or psychiatrist complete a psychiatric review technique form (PRTF). Previously, a PRTF was required to be completed whenever there was the allegation of a mental impairment. This, however, has changed. 20 C.F.R. § 404.1520a(c)(2) provides that "all relevant and available clinical signs and laboratory findings, the effects of [claimant's] symptoms, and how [claimant's] may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment[]" will be considered. A rating will then be assessed in four different functional areas which are activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Id. at (c)(3). The regulation further sets forth that a form will be completed at the initial and reconsideration levels. Id. at (e)(1). Such a form, however, is not required to be completed by an ALJ. Rather, the findings of the form must be documented within the ALJ's written opinion. "At the administrative law judge hearing . . ., the written decision issued by the administrative law judge . . . must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described [previously]." Id. at (e)(2).   In the instant case, the ALJ extensively reviewed the clinical findings regarding Delmas's mental impairment.

8

AR 30. He then reviewed each of the four areas as required by the regulations. AR 31. Thus, the Court finds that the ALJ fulfilled the requirements of the regulations.

### E. Lack of Evidence to Support RFC

Plaintiff's next contention is that there is no evidentiary support for the ALJ's finding that Delmas possessed the RFC to stand for six hours in an eight-hour work day. This assessment, however, does not contradict any evidence in the record other than Delmas's testimony and the testimony of his wife and other lay witnesses. The ALJ, however, properly discredited Delmas's testimony and the statements of the lay witnesses. AR 35-37. Furthermore, the medical record as a whole supports the ALJ's findings. At no time did any physician place any restrictions on the length of time Delmas could stand. As a result, the Court cannot say that the ALJ's determination of Delmas's RFC is not supported by the record.

### F. Veterans Administration (VA) Ratings

Plaintiff next alleges that the ALJ erred by failing to give "explicit attention" to the VA ratings when formulating Delmas's RFC. See Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998). The ALJ extensively discussed the VA ratings in his opinion. AR 37. He noted that "the VA ratings indicate that many of the claimant's allegedly disabling impairments were mild during the relevant period." AR 37. He discussed what the ratings meant. AR 37-38. In the end, the ALJ determined that the VA ratings did not support a finding that Delmas was disabled. The Court finds that the ALJ did not err in his consideration of the VA ratings.

### G. Failure to Develop the Evidence

Plaintiff contends that the ALJ failed to develop the record by failing "to enlist counsel to assist with reconstructing lost exhibits that were material to the claim of conditions affecting the

9

claimant's mental health, knees, cervical and lumbar spine, and vision prior to June 30, 1988." The question is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record. . . ." Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993). Plaintiff does not state what records were lost or what these records would have shown. Rather, plaintiff makes the conclusory statement that the exhibits were material. As the Eighth Circuit stated in Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993), this Court is "not convinced that these [documents], or any of the . . . items claimant says were omitted, would be important enough to make a difference in the circumstances of this case." There is no indication that the outcome of this case would have been different had the alleged documents been restored. As a result, the Court finds that the ALJ did not err in developing the record.

**H.     Inconsistency Between the RFC Findings and the Jobs Listed by the Vocational Expert**

Plaintiff's final contention is that the vocational expert's list of potential jobs is inconsistent with the ALJ's RFC finding that Delmas could perform light work. The VE identified sedentary, unskilled positions that would be available were bench hand repair of small products, press operator, and surveillance systems monitor. AR 39. The VE also identified light, unskilled positions of garment sorter and assembler as possible positions. AR 39. Plaintiff argues that five of the six jobs suggested by the VE required a greater ability then carrying out simple instructions. The only job that met Delmas's RFC requirements was that of bench hand. Plaintiff argues that this job, however, requires manual dexterity and motor coordination and that the ALJ failed to make findings regarding Delmas's RFC in these areas and therefore the case should be remanded. The Court finds that even if five of the six jobs are unsuitable for Delmas,

10

the one remaining job indicates potential employment in the economy. The ALJ was not required to make findings regarding Delmas's finger dexterity and motor skills, especially when there was no disability alleged that would affect those functions. Accordingly, it is hereby

ORDERED that the ALJ's decision is affirmed.

Dated this 27th day of March, 2006.

BY THE COURT:

/s/ Richard H. Battey
RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE